## Case No. 15,211.

UNITED STATES v. GIVEN.

[17 Int. Rev. Rec. 195.]

Circuit Court, D. Delaware. 1873.

CIVIL RIGHTS — VIOLATION BY STATE OFFICER — POWERS OF CONGRESS.

[1. The fact that the 15th amendment of the United States constitution merely prohibits the denial or abridgment of a citizen's right to vote on account of his race, color, or previous condition of servitude, does not limit congress, in adopting legislation for the purpose of enforcing the amendment. to cases in which there has been actual legislation by the general government or by a state denying or abridging such right.]

[2. In adopting legislation for carrying into effect the 15th amendment to the constitution, congress has power to provide for the punishment of a state official who refuses to perform the duties necessary to qualify colored citizens to vote.]

[This was an indictment against Archibald Given for violating the second section of the act of May 31, 1870. There was a verdict of guilty against the defendant, and the case is now heard upon motion in arrest of judgment. For the opinion of Judge Strong, delivered in the same case, see Case No. 15,210.]

BRADFORD, District Judge. Taking up the first objection to the indictment. viz.: "For that the statute under which said indictment was framed, was not in pursuance of the constitution of the United States, and is in conflict therewith." We think the 2d section of the act of congress [May 31, 1870 (16 Stat. 140)]. on which this indictment is framed, is in pursuance of, and is authorized by the constitution of the United States. and not in conflict with the same. It is the result of the exercise of legislative authority, specially granted for the purpose of accomplishing the object contemplated by the fifteenth amendment, viz., the purpose of securing the right to vote of all citizens without regard to race, color, or previous condition of servitude. Without now considering the legality of the means to accomplish this result, we cannot appreciate the force of the argument, that there cannot be any legislation by congress under the authority of the fifteenth amendment, except that which shall be enacted against some "denial" or "abridgment" by the United States, or by the several states, of the right of citizens of the United States to vote on account of race, color, or previous condition of servitude. The power specifically granted by the fifteenth amendment is to enforce by appropriate legislation the article in question. In my judgment the amendment carries with it the grant of a constitutional right. Indeed it is difficult to conceive of the constitutional prohibition, on the states and general government, from denying or abridging a constitutional right, without at the same time conceding the grant of the

right; for such prohibition or denial appears to be an absurdity if the grant be not admitted, for otherwise there would be no subject matter for the denial or prohibition to work upon. Congress then (the grant of right being admitted) can select any means it deems appropriate to render available and secure this constitutional right to vote, and is not limited to such measures as may be directed to a denial or abridgment of the right by the general government or the states. If the enjoyment of the right is endangered from any other cause than a denial or abridgment by the general government or the several states, that danger is a proper subject matter of legislation; just as much in my judgment, as hostile legislation by the general government or states would be.

The right to vote, before this amendment to the constitution, was wholly granted or denied and regulated by the several states of the Union; and now the citizens of these United States have granted and guaranteed by national authority that which before they enjoyed—if enjoyed at all—at the will of the local or state governments. To make available the right to vote to all citizens of the United States without regard to race, color, or previous condition of servitude was the direct purpose of the fifteenth amendment. We cannot see therefore, how legislation which has this purpose directly in view cannot be appropriate because it was not directed against some denial or infringement by general or state legislation. The mode of the assertion of the constitutional right to vote in the fifteenth amendment is not altogether a novel feature in our constitution—as has been remarked on a former occasion during the trial of this cause. "The privilege of the writ of habeas corpus shall not be suspended unless, when in cases of rebellion or invasion, the public safety may require it." Section 9, art. 1, par. 2. This clause comprehends the constitutional grant of the writ of habeas corpus, under the form of an expression of denial of its suspension except in certain cases. Article 1st of the amendment to the constitution, is in these words: "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof, or abridging the freedom of speech; or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." In this article it will be observed that the right to full liberty of religious faith, as regards any attempt to control it by the general government, secured to the citizen by the constitution of the United States, is granted under a form of expression, forbidding congress to make any law "prohibiting the free exercise thereof;" and that the right to a free press and free speech are granted under a form of expression denying their abridgment. So also

with the right of the people to assemble and petition the government for a redress of grievances. Article 2d of the amendment is in these words: "A well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed." This constitutional right, to keep and bear arms, is thus conferred by the declaration that it shall not be "infringed." In article 4th of the amended constitution, "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, is granted by the declaration that this right shall not be violated." It will thus be seen that the form of expression which contains the grant of the right to vote to the citizens is not at all unusual in the constitution.

The argument for the defence is that, as there is no express grant of right, but a prohibition of a denial or abridgment of the right by the general or state government. congress is limited in its exercise of legislative powers to those cases where there has been such denial or abridgment, and as there has been in the state of Delaware none such, the act of congress as regards this case is "ultra vires," is without constitutional authority. Now admitting, for the sake of argument (which otherwise I deny in toto), that the legislation of congress to carry into effect the fifteenth article must be confined to cases of abridgment or denial of the right to vote by the United States, or the several states, it must be conceded that any practical denial or abridgment existing at the present or apprehended in the future, can be made the subject matter of legislation, so as to guard against and defeat obstacles and hindrances in this form. If by indifference, refusal to pass such laws as harmonize with and aid in making available and secure to all citizens the right to vote, and by neglecting to punish the officers of its own state for a violation of their duty in affording to the citizens the prerequisites to voting, a practical denial and abridgment of that right are effected. congress, in my judgment, has full power under the fifteenth amendment to remove this evil, and to select such means as it may deem appropriate legislation. Nor is it necessary that there should be direct and hostile legislation by the general government or the several states. Suppose the qualifying process can be performed by none but officers acting under state authority, and there is no law, or disposition in state officials to punish the individual who by his own wilful act disfranchises citizens of the United States, is not the practical denial and abridgment as complete and as destructive of the purpose the fifteenth article was intended to accomplish, as if there was active hostile legislation? Whether, therefore, the scope of legislative action is extended, under the fifteenth article, to all appropriate legislation,

for the purpose of making available and secure the right to vote granted by the article, or is confined to such legislation as will prevent a practical denial or abridgment thereof by the United States, or the several states, we think this 2d section of the act in question, on which the indictment is framed, is based on ample constitutional authority, and that therefore the first reason filed for arrest of judgment must be overruled.

2. "For that the provisions of the said statute are not applicable to the duties imposed by the laws of Delaware upon the said defendant, as charged in the said indictment." We suppose it is meant to be asserted by this second reason filed, that the collector of taxes was not intended to be embraced in the class or description of persons named in the act as "charged with the performance" of certain duties, etc. We fail to see any ground for such a conclusion. When we examine the provisions of the constitution of Delaware and of its statutes, imposing duties on the collector, the performance of which are pre-requisites to the citizen becoming qualified to vote, we cannot see how any person or officer could be more clearly and certainly embraced within the class or description of persons named in the act of congress, than the collector of taxes, the defendant in this indictment. I do not consider that this will bear an argument; the second reason is therefore overruled.

The third and last reason filed is in these words, viz.: "For that the said defendant being an officer of the state of Delaware, with no power or duties but such as were prescribed by the constitution and laws of the said state, is answerable only to said constitution and laws for any non-performance thereunder." This objection, stated in a different manner, is in substance this: "That the national government has no power to require or command a state officer to perform an act, which act is also required of him by state authority, and consequently has no power to punish for the non-performance of the act." The non-performance, it is said, is a breach of a duty to the authority under which the officer was appointed, and for that breach of duty he can be punished by no power save that under which he was appointed. If the duty of the collector as a qualifying officer was a duty which he owed to the state alone, and his act violated no law but that of the state under whose authority he acted, it may be conceded that there would be no warrant for the United States punishing, by fine and imprisonment, such a person under such circumstances. Congress, in legislating on this subject, found that the ability of the citizen of the United States to vote, depended on certain acts which could only be performed by certain persons holding office or authority under state governments, and unless there was a concurrence of the will of these officers with the action of the citizen, in qualifying himself to vote, the right of voting would be utterly destroyed. And supposing such a non-concurrence—and that it met no punishment in the several states—unless congress exercised a direct authority over, and punished the men who refused to perform their part in, qualifying citizens to vote, the fifteenth amendment would amount to nothing as a guarantee or security of right.

The statute of the United States, then, under which this indictment was drawn, not only made a rule of action, superadded to that which was created by the state, but created a penalty, not for violating a state law, for that it could not punish, but for violating a United States law, or law protecting the constitutional rights of citizens of the United States. The fact of duty to state authority did not absolve the state official from duty to United States authority. The law-making power took these individuals just as it found them; invested with ability to carry into effect the fifteenth article, or to render it nugatory, and imposed a duty, by way of punishment, for the non-performance, impartially and fairly, of what was already required of them by state authority; they created no new duty, added no new act to be performed, made no new scheme, plan, or policy, different or other from that already required of the state officer, but only commanded him, as his action was vital to the exercise of right by the American citizen, to do impartially and fairly his duty.

But it is alleged, congress cannot impose a duty on a state officer to execute a United States law, and as it cannot impose such a duty, it cannot punish for violation thereof. The fallacy of this argument lies in not drawing the distinction between punishing a state officer for violating the laws of his state and violating the laws of the United States. Has congress the power to make it criminal for a state official to hinder and obstruct the exercise of this constitutional right to vote? This is the real question. I can have no doubt on that point. This power then granted—having committed the act of hindrance and obstruction—this defendant has made himself amenable to the laws of the United States, and incurred the penalty for their infraction. Now, how does his official character, or his duty to the state government, free him from this predicament. There are many cases where a man owes a double duty—to the state, and to the United States. For instance, among many others that might be named, the state, in the exercise of its undoubted rights of police arrangement and discipline, requires that its citizens shall keep the peace toward each other—shall not defraud each other by the circulation of spurious money; and yet when these crimes impinge on some duties due from the general government to citizens of the United States, they do not rely on the states for punishment, but legislate directly against the of-

fenders, and punish by United States laws. Thus they will not leave the punishment of one who assaults a United States mail carrier with intent to rob, or who circulates spurious United States money, to the states, but punish these criminals by United States laws, leaving it optional with the states how far they will also vindicate their own broken laws. Justice Daniel, in U. S. v. Marigold, 9 How. [50 U. S.] 569, says: "With the view of avoiding conflict between the state and federal jurisdiction, this court, in the case of Fox v. Ohio [5 How. (46 U. S.) 410], have taken care to point out that the same act. might, as to its character and tendencies, and the consequences it involves, constitute an offence both against the state and the federal governments, and might draw to its commission the penalties denounced by either as appropriate to its character in reference to each." In [Moore v. People] 14 How. [55 U. S.] 15 Justice Grier rules that states might punish for harboring slaves in violation of their own laws, and that the same act might be a breach of the peace, and a transgression of the laws of both the United States and the individual states. Judge Nelson, in a case reported in American Law Review for January, 1873 [U. S. v. Wells, Case No. 16,665], where a person was indicted for passing forged U. S. treasury notes, and also indicted in the state court of Minnesota for the same offence, said: "The concurrent jurisdiction must be regarded as settled." Mr. Justice Johnson, in [Houston v. Moore] 5 Wheat. [18 U. S.] 1, asks: "Why may not the same offence be made punishable both under the laws of the state and of the United States? Every citizen owed a double allegiance; he enjoys the protection, and participates in government, of both the state and the United States." Now, as there can be no valid reason why a man who violates a United States law in passing forged money should not be punished because he was forbidden by the laws of his state not to do that act, so there can be no valid reason why this defendant should not be punished for a violation of a United States law, because at the same time he violates the law of his state. A conviction for passing counterfeit money, and a sentence for the same, would undoubtedly interfere somewhat with the financial duties of a collector; yet no one supposes, for a moment, that his official position would constitute for him any protection, or that by his punishment the reserved rights of the state would in any constitutional sense be trenched upon; and yet they would be just as much in the one case as the other.

This claim made by the defence of immunity from punishment because it would interfere with the performance of official duty, would prevent the general government from punishing any state official who violates a United States law. I cannot, therefore, see that the record presents a case of an officer who had no duties but state duties, and there-

fore answerable only to state authority, but that a case is shown of a state official violating a United States law, which he was equally bound to obey and respect, with the law of his state.

I must therefore overrule the third reason filed for arrest of judgment, and the motion in arrest is denied.